The next matter, No. 24-1920, Axis Insurance Company v. Barracuda Networks, Inc., et al. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Thank you. Stephen Rosenberg for the appellant, Axis Insurance Company, Your Honors. May it please the Court, I'd like to reserve one minute for rebuttal. Okay. Go ahead. Thank you, Your Honor. There's a great deal going on in the district court in terms of commercial litigation in this case. There's data breaches, class actions, assignments, subrogations. But to me what this appeal really is is a civil procedure issue about summary judgment standards and whether there was sufficient evidence before the district court that the court erred in granting summary judgment to the defendant on the remaining counts. Given that, tell us where did Judge Gorton err in finding that there were no genuine issues of material facts? Because that's what we're reviewing de novo. So where are the issues of material facts? Certainly. So there are three types of claims. The first one, which is Zoll, as the assignment was, claimed for equitable indemnification against Barracuda. The error there is that there is sufficient evidence, there's substantial evidence, that Barracuda is the cause of the data breach, not Zoll. We explained in our brief that Barracuda essentially admits that the data breach, which was hundreds of thousands of patients' medical information and at least 8,000 Social Security numbers, occurred because of human error on the part of Barracuda in leaving their computer system during some type of technical reconfiguration, open to the Internet as a whole. They didn't even discover the problem for several weeks. They didn't start to fix it for approximately two months. That's the proximate cause of this loss. Barracuda, in its paperwork, wants to argue that Zoll also made mistakes. Isn't there a case from the Mass. SJC particularly, it's Lyon v. Morphew, that says an employer in general of an independent contractor is not liable for harm caused to another by the independent contractor's negligence? Isn't that what we have here? No, we don't. There are really two different doctrines, the question of equitable indemnification and the question of independent contractor and employment of an independent contractor. The independent contractor line of case law is really about, to boil it to its simplest level, you're a homeowner and you hire someone to paint their house and they drop a can of paint on somebody. You're not responsible. You've left them in charge. Equitable indemnification is a separate principle to reallocate, as the First Circuit has said, losses to the more culpable or, in the case of this action, the only culpable party in terms of actually causing the loss. And so that, equitably, the party that shouldn't be holding this loss at the end of the day doesn't get stuck with it by invocation of other doctrines. For instance, equitable indemnification under Massachusetts law originally begins and is created out of the law of product liability and how do you adjust it. It's the same with independent contractor issues. Let me just ask a clarifying question. Is it your position on equitable indemnification, is it your position that two parties could have no relationship, legally recognized relationship at all, but that one could still be vicariously liable for the other? Well, the problem with that is that it's hard to see a scenario in which that could actually happen. I can't be walking down the street and my brother crashes his car into someone and suddenly I'm responsible for it. We have to have some sort of factual relationship. The difference between what Barracuda argues and what the district court judge found and our position is that it doesn't have to be some very specific pre-recognized nature of that relationship. I understand the district court to have reached the conclusion. When you say pre-recognized, do you mean legally recognized? Legally recognized, that you're a retailer of a good manufactured by another one, something that's already been recognized. And where is that relationship here that generates a genuine issue of material effect? So the way that the parties' contracts operate, Barracuda is hosting the protected medical information that Zoll is holding through its customers. Barracuda's job is to protect that Zoll has contracted with the intermediary, Fusion, for the specific purpose of having this handled by Fusion and its contractor, Barracuda. They are essentially contracting parties, possibly in Zoll's case a third-party beneficiary of the contract, but essentially in real time, Barracuda is doing Zoll's work of protecting the data and falls down on that job. That's the relationship. They basically have a contractual party relationship in which Zoll gets sued in a class action because Barracuda didn't do that job properly. Okay, but what evidence in the record creates that genuine issue of material effect, or what bit of evidence did Judge Gordon ignore? So in Barracuda's summary judgment briefing and in their statement of material facts, which are in the record, I'm sure we cite to them in the briefs, Barracuda effectively admits that, or maybe more than effectively admits, that the breach occurred because of Barracuda's mistakes and that that's why the data was basically released into the wild. That evidence shows that the cause, the proximate cause of this loss, was not Zoll. It was Barracuda. And our view and our position is that Barracuda at the same time argues to the contrary. Well, the evidence shows you could have done other things to make sure that we didn't mess it up in the first place, and that creates a question of fact for the jury. Who's really the proximate cause of this loss here? Because if it's Barracuda, then under the appropriate application of the equitable indemnification law, it should pass. In the court's opinion, he's saying what you're saying. Those facts, they're not really disputed, but as a matter of law, there's no liability. Am I not correct? Well, he does, but he says it because this relationship, it doesn't matter that this occurred factually. This relationship can't be enough. It's not recognized under Massachusetts law. It isn't a scenario that has previously existed. Well, what is your best SJC case or court of appeals case for why this relationship should be recognized? So it is across the board in the cases cited in our briefs. There is actually not an SJC or appeals court decision directly on this question saying this type of a contractual relationship is sufficient to give rise to equitable indemnification. It's almost the opposite in that those decisions establish a general principle of a right to equitable indemnification when one tortfeasor has caused the loss and the other party is vicariously or derivatively, because of that party's actions, forced to incur the loss, that it can then be reallocated equitably. The SJC and the appeals court. Given your response, do you think the law on derivative relationships is sufficiently established so that we can reasonably predict what the SJC would do in a scenario like this? Or should we give any thought to certifying it over there? I hate to do the on the one hand this, on the other hand that routine, Your Honor. If that's the right answer. There's an argument both ways. I think it's clear enough after, I think, the body of case law rising out of product liability goes back to the 80s, that at this point, the fact that the court hasn't imposed a specific narrow framework of these are the only types of relationships that can do it, tells us what I believe the case has read as a whole really say, which is when you have a fact pattern like this, if you can show you're only being held liable and being sued because of the other party's acts and you're being held derivatively liable, you can reallocate through equitable indemnification. But there's also an argument to be made that the Massachusetts state court should be asked to decide this just conclusively once and for all. What's the answer to this question? Rather than implying it from 30 years of decisions, to instead be asked a direct question. What's the answer to that? Here, I think it's so clear, frankly, that Zoll's liability comes directly from Barracuda's conduct, not from anything else. And also given, although granted it's a maritime case, this circuit's case law on equitable indemnification, that treats it explicitly as an equitable reallocating of the loss to make sure it sits on the most culpable party. That's not really necessary. And instead, it can be transferred right here on these facts to Barracuda. You want to address the breach of contract and covenant in the same summary judgment context? What issues of material fact were there that we should overrule Judge Gorton? So there's basically two different versions of the facts. One is the Barracuda version that you guys didn't include these conditions precedent. End of story. The contract never became enforceable. The flip side, factually, and that's almost a table stakes based fact. It's not really an interpretation. It's just this never happened. On the opposite side, on Axis's side, is that for years of this relationship, Fusion never saw or was never contacted or watched Barracuda never act on that to protect itself, never audit contracts, never take any actions, even though they continued to have an ongoing relationship for years, and that Fusion concluded that was it. In order for there to be liability, you need to have a duty under the agreement. Where's the duty under the agreement for that? On Barracuda's part, Your Honor, Barracuda clearly took on a contract to host these emails. In their own briefing, they paint themselves as experts on cybersecurity. That's the obligation they took on, the cybersecurity part, and they failed. All of the harms here are about the failure of their cybersecurity actions. That was the base central element of the contractual relationship. Please continue. Anything else? Effectively, those were my key issues, so unless Your Honor has any questions. We have the briefs. Any other questions? Okay, and you have one minute rebuttal. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning. May it please the Court, I'm Christopher Silva of DEMEO LLP, appearing on behalf of Defendants Appellees Barracuda Networks and Sonian. And I'm here to ask this Court to affirm the District Court's grant of summary judgment in all respects. Now, this case concerns a reseller contract, as you heard, between Barracuda and Fusion, and that contract was intended to allocate the risks, the required provisions, in Fusion's contracts with its customers, such as Zoll. That would include clauses regarding indemnification and limitation of liability. And in the case of the breach, the liability would be allocated as Barracuda and Fusion intended. And as the District Court found early on in the case, Fusion failed to include those clauses in the contract with Zoll, and thus Barracuda has spent the past five years defending itself against claims that, had Fusion acted properly and included those clauses, would be either barred or de minimis. But while the contract failed, this Court can still grant Barracuda the relief it seeks by affirming the finding of summary judgment in the District Court. Now, as an initial matter, there is a waiver with respect to the equitable indemnification claim that survives from Zoll's initial complaint. The equitable indemnification claim relies, contrary to what counsel has said, relies on the relationship between the parties. In order for there to be derivative or vicarious liability, there must be some manner of legal relationship between the parties. And it is threaded through all of the cases that are cited by both parties, this reference to a relationship between the parties. At summary judgment, plaintiff's counsel did not engage on this issue of relationships. They argued that proximate causation was sufficient to find liability, even without a relationship. Now, for the first time on appeal, they start to talk about the relationship. Having failed to do that below, that argument should be waived and should not be considered by this Court. And what you're saying is that in the record below, there's no evidence, either one way or another, of a relationship, therefore no genuine issue of material factors. You have no evidence of that. Well, with respect to the waiver issue, they didn't join the issue. But moving on to the actual... I feel like a more generous reading of that, of the waiver issue, is that access was sort of saying, irrespective of the party's relationship, you know, there's a relevant factor to prove equitable indemnification. And up here, what I think they're saying is no particular or specific relationship is required. Like, it seems somewhat similar. Like, those arguments seem similar enough to me, such that we might say they were not waived. How do you see it? Certainly, that is the Court's prerogative to see it that way. However, we feel like they focused their argument at the district court level on the proximate causation issue that they still maintain is the true probative fact. Without ever engaging on this idea of relationship. Correct. And the district court found that. Judge Gorton found that they did not engage on the issue of the relationship. They didn't claim that the independent contractor relationship was sufficient. They didn't claim there were other factors that augmented that relationship to make it sufficient. They didn't argue there were some other kind of relationship. There was no evidence in the record with respect to the relationship. And that is the standard in Massachusetts. If their position is relationship doesn't matter, is that waiver? I would say so, yes. I would say yes, Your Honor. They focused on the proximate cause. They focused on the issue of Barracuda being responsible for the breach. And there is no question. Barracuda bore some responsibility for this breach. However, the standard in Massachusetts, in addition to the relationship issue that we have discussed, and is fairly present in every one of the cases that the parties have cited in their briefs, if read carefully, has a reference to the relationships of the parties. There are one or two exceptions where the court is looking at the issue of blamelessness, which is the other important factor. But in any case where they're talking about the transfer of this liability, the relationship is considered, whether it's in a footnote or it's assumed before the case went to the jury. So the relationship is critical. And I think as the discussion went with Brother Counsel, how do you get derivative or vicarious liability without some form of relationship? When two parties harm a third party and there is no relationship, those are joint tortfeasors. That's contribution. That's a different area of law. That is not indemnification. But as we've argued, putting aside waiver with respect to the substance, again, there were no facts in the record that would support any kind of relationship. The district court found that there was an independent contractor relationship between Zoll on the one hand and Barracuda on the other. But we would argue that it's not even that close of a relationship. There were two independent contractor relationships. There is one between Zoll, the owner of the information, and Fusion, its independent contractor, and a separate contract between Fusion and Barracuda, independent contractors as well. So not only was this not a case where it was simply an independent contractor relationship, it was these two independent, independent contractor relationships, which would be an insufficient relationship to find the transfer of liability. And I think as Judge Gelpie mentioned earlier, the idea of an independent contractor relationship being the basis for the transfer of liability is not supported by the case law. It is found that that type of relationship doesn't create derivative or vicarious liability, at least not without more. And this being a motion for summary judgment below, it was incumbent upon the plaintiffs, if they felt there was more information out there where they could augment the independent contractor relationship or portray it as a different kind of relationship, they had the burden of bringing those facts forward at summary judgment, marshalling the facts, and presenting it to the court. They did not do so. So there was no evidence in the record from which the court could find an appropriate relationship to transfer liability. Moving to the second element, blamelessness. That is a required factor in Massachusetts court with respect to claims of equitable indemnification. The court in the Fraco case, which was a Mass Appeals Court case in 2013, talked about this in some detail. I'm sorry, when you're referring to blamelessness, are you referring to what seems to be the factual dispute as the causation? That is how counsel would portray it. But we would portray it as an absence of evidence of blamelessness. It's sort of an inability to unring the bell. The standard is that in order to be entitled to equitable indemnification, a party must be blameless. They must bear no responsibility for the actions that created the liability. Here, there's ample evidence in the record of Zoll actually committing acts and engaging in conduct that created the situation that led to the data breach. As an initial matter, Zoll is the only entity in this case that in and of itself has HIPAA obligations. They have an obligation to protect PHI that they use in their business. It is that obligation to protect PHI that was breached. That is a Zoll obligation. Second, Zoll, understanding its HIPAA obligations, had policies in place to protect encrypted data. Are you referring to the allegation that the data transfer was not encrypted? I'm sorry, Your Honor. Are you referring to the allegation that the data transfer was not encrypted? Sort of, Your Honor, yes. To be clear, the data transfer was encrypted. Not to get too technical, but the pipe through which the data was transferred was an encrypted pipe. However, the data inside that pipe, the data that Zoll was maintaining on its own systems and transferring to Barracuda was not in an encrypted state itself. So it was unencrypted, encrypted in the pipe, and landed with Barracuda unencrypted, unprotected. And that was inconsistent with Zoll's obligations under HIPAA. It was inconsistent with Zoll's policies and procedures. It had policies requiring that PHI and Social Security numbers be encrypted at rest, that it be encrypted when it's transferred out of Zoll's servers, as it necessarily was, to go to Barracuda for archiving. Is that requirement in the contract between Zoll and Fusion? Encryption. That the data be encrypted. I don't believe that there is a specific requirement in the contract between Zoll and Fusion that the data be encrypted. But it is an obligation that is within the HIPAA statute as it applies to Zoll. Is there something in the contract specifically that says that HIPAA requirements are incorporated into the contract? I believe that the contract between Zoll and Fusion does have references to HIPAA requirements and protection of the data. However, again, that is not a contract that Barracuda was a party to, and they were not informed of the existence of HIPAA data in this data set until after the breach. But, I mean, we have to look at their contract because you're arguing blamelessness. Yes. We have to figure out what their obligations under the contract would be, wouldn't we? Well, I think we need to understand what Zoll's obligations were. As the holder of the PHI, what its obligations were with respect to the treatment of its customer data. Does that make sense? I'm not sure I agree with you, but it makes sense. Okay. Thank you. I think another element of Zoll's irresponsibility was their disregard of guidance that they got from HIPAA experts. They had HIPAA experts come in in 2014, 2016, 2018 and evaluate their systems, make recommendations, and find that they were lacking with respect to their protection of PHI. Zoll took no steps. And it's a meaningful fact that this data was not encrypted. Zoll's own expert, Kroll, not Zoll but Kroll, a company that Zoll hired to investigate the breach, testified that if Zoll had properly encrypted this information and the breach had occurred, the exposure had occurred, there would have been no breach, and thus there would have been no subsequent lawsuit that Zoll is seeking indemnification for. So there is ample evidence in the record that Zoll was not blameless, and there's no evidence in the record to absolve them of that blame. This is not a question of who is more responsible. That's not the case law in Massachusetts. The basis is that a party seeking indemnification must be blameless. There is an exception that is talked about in the Fraco case, but that is a very rare exception where the party seeking indemnity, their liability was minuscule, immaterial. That is not the case here. Zoll had within its power the ability to encrypt the data, and that would have prevented this entire breach from happening. They were told to do that, and they failed to do so. So as such, there was no relationship that would give rise to derivative or vicarious liability that could transfer, and Zoll was not blameless for the breach. It could have avoided it, but it chose not to. With respect to the remaining claims, Fusion's remaining claims, breach of contract and breach of the covenant, with respect to breach of contract. Before you get to that, is there any dispute about what you just argued as far as Zoll's duty? There is no dispute of facts in the record about these events having occurred. Is there any dispute about the legal significance of them? There may be. I think we'd have to speak to Brother Counsel about that issue, but the fact of those events having occurred, the policies existing, the decisions being made, those are in the record. There's no dispute of fact with respect to those issues, and there was not at the trial court as well. Moving to breach of contract, again, as the district court found very early on in the case, Fusion had breached its obligations with respect to this contract by not including indemnification language and limitation of liability language that would have protected Barracuda in the case of a breach like this. As such, they can only proceed with a breach of contract claim if they demonstrate waiver, waiver by Barracuda of a right that it had in the contract. The only thing that they point to is this right to audit, and the only evidence in the record is silence. It's a failure to exercise this audit right over the course of the contract. And as the district court found and as the Dunkin Donuts case also finds, silence cannot be sufficient to provide the clear, convincing, and unequivocal evidence that you need to prove the voluntary relinquishment of a right through waiver. Similarly, with respect to the estoppel argument, under estoppel, silence can, in some circumstances, create a claim of estoppel. However, that silence must be accompanied by a duty to speak. And again, in the record here, the only evidence is Barracuda not enforcing its right to audit, and that is that there is no evidence of any kind of duty that Barracuda had to assert this right, and so it cannot be estopped. And finally, with respect to the breach of the covenant of good faith and fair dealings, in order to make such a claim, the claimant must identify a right or an obligation that exists in the contract. And there is nothing in this contract that talks about the conduct that is required in the event of a data breach. The contract between Zoll and Fusion did have language about what must happen in a breach, but the contract between Barracuda and Fusion had no such language, and there was no obligation. As such, there cannot be a claim for a breach of the covenant. Okay, thank you. Thank you. Counsel, you have one minute for rebuttal. Please reintroduce yourself back on the record. Thank you, Your Honor. Steven Rosenberg for the appellant, Access Insurance Company. Very briefly, two points. First, on the waiver issue, I just wanted to point out that in the summary judgment papers, you can find it in the appendix at page 672. Access literally argued Zoll's claim for tort-based equitable indemnification does not require a special relationship between the parties. I don't see where the waiver argument even comes in. Second, and more importantly, I think the Barracuda's entire argument on equitable indemnification. I'm sorry, was anything cited? Was that proposition cited? In my briefing? Yeah, in your summary judgment. The issue that special relationships are not needed was addressed in the briefing, yes. So cases were cited. Yes, in fact, the First Circuit cited just looking at the page here. And I just wanted to reference the fact that on the question of equitable indemnification, Barracuda's entire argument to this appeals court is a factual dispute of who's really responsible. That's the issue that needed to go to the jury. Thank you. Before you sit down, his argument is that legally you have to be totally blameless. And therefore, if there's evidence in the record that casts light on the issue of blame that's not disputed, then as a matter of law, he's saying that he wins. So there's a few things to that. First of all, the Massachusetts state case law referencing that is basically dicta. But for most Massachusetts lawyers, we've assumed that's what the rule is. The First Circuit case law says the most culpable party gets stuck with the bill at the end of the day in a derivative liability situation. So it's not entirely certain that it's a blamelessness standard. Even if it's a blamelessness standard, it's not you didn't have any role in it or were engaged in it. It's who caused the loss by their actions, which is basically proximate causation. And that's the question. If the standard is blamelessness, it's who did you as the person seeking indemnity, are you proximately responsible for the loss? Then you can't get indemnification. But if you're not and you played some role, you still get it. It sounds a little different. It sounds like that blamelessness means if there's any contributory negligence, then you're not blameless. That's another way of looking at it. You have to have cause. Right. And he's saying that because there's evidence in the record of blame, that on essentially a theory of contributory negligence as a matter of law, you don't get anything. Well, that then gets to this question of fact that couldn't be done on summary judgment because as I think we laid out in the reply brief. But it's not a question of facts if it's a matter of law because if there's evidence of blame on one side and if contributory negligence is more than blameless, then as a matter of law, if there's evidence of your blame in the record, then you just can't win legally. I would say that if the conclusion is that they were contributory negligence, yes. But if there's just evidence that a jury would reject and say, no, no, no, they didn't contribute through their negligence, through breach, through causation and so forth, but they simply turned over the unencrypted evidence expecting that Barracuda, given its cybersecurity expertise, would protect it, and that's the only fact that really causes the loss is Barracuda's failure to do that, then the jury can't find contributory negligence. There's an element missing. And what about the evidence that they say experts told you that your information was at risk because you weren't properly encrypting it? I would say that at this point on this record and the discovery in this case, there's no question that throughout time Zoll was always looking to bring in expertise and improve its practices and stay compliant with HIPAA. So like any competent company handling protected medical information, they were always getting advice about how to raise your standards even more than where they were. But I would argue that's not a conclusion that you can draw on the evidence that they were breaching their obligations in a way that caused this loss. The loss was caused simply because, as Barracuda admits, they just left the port open for seven weeks. Okay, thank you. Thank you, Your Honors. That concludes argument in this case.